Tagged Opinion
Do not publish



ORDERED in the Southern District of Florida on November 6, 2012.

Laurel M. Isicoff, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                              CASE NO. 10-13778-BKC-LMI

CRISTINA J. PERTIERRA,                              Chapter 7

      Debtor.
_____/

 BARRY E. MUKAMAL,                                 Adv. Case No. 11-01855 BKC LMI

      Plaintiff,
vs.

CRISTINA J. PERTIERRA,

      Defendant.
_____/

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW
### ON TRUSTEE'S COMPLAINT TO DENY DEBTOR'S DISCHARGE[1]

This matter came before this Court on August 21, 2012 on the Trustee's Complaint to

Deny the Debtor her discharge under various sections of 11 U.S.C. §727[2] and the Trustee's

---

[1] These constitute my findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

objection to Debtor's claim of homestead exemption and personal property exemptions in excess of $1,000.  Based on the evidence presented, including the testimony of witnesses, I find that, for the reasons stated, the Debtor's discharge should be denied under 11 U.S.C. §§727(a)(3) and (a)(5). However, I find that the Trustee's objection to exemptions should be overruled in part.

## FACTS

The Debtor has been a licensed attorney since 1996.  The Debtor practiced law actively, and retained an office, through 2008. Although the Debtor apparently does not currently practice, when she did, she practiced primarily in real estate, wills and probate.  As an attorney the Debtor performed approximately 80 real estate closings.  She also owned and operated a title company and was a title agent for Attorney's Title Insurance Fund.

The Debtor and her husband own a house in South Miami, Florida which the Debtor has identified as her homestead (the "Miami Property").  The Debtor previously owned property in Estero, Florida (the "Estero Property") which she transferred to her husband in late 2007 for no consideration, because, the Debtor testified, her husband had better credit than she did, and they were going to try to refinance the property[3].

The Debtor refinanced the Estero Property several times. The Debtor and her husband also refinanced the Miami Property. The two refinancing transactions that are of the most interest in this adversary proceeding are the 2007 refinancing of the Estero Property, from which the

---

[2] COUNT I – 727(a)(4)(A) and (D) – False oath or account ; withholding records.
 COUNT II – 727(a)(5) – Failure to explain loss of assets.
 COUNT III – 727(a)(3) – Concealed, destroyed . . or failed to maintain any recorded information from which the Debtor's financial condition or business transactions might be ascertained.
 COUNT IV – 727(a)(2) – Transferred, removed, etc. property of the debtor within one year before the petition date or property of the estate after the petition date.
[3] The Debtor acknowledged in deposition that there were no refinancing attempts once title to the Estero Property was transferred.

Debtor obtained approximately $600,000 to $685,000[4] in net proceeds, and the 2007 refinancing of the Miami Property from which the Debtor obtained approximately $141,000 in net proceeds. In addition, at various times, at least through 2008,[5] the Debtor took out approximately $150,000 in cash advances.  In total, at the time of her bankruptcy filing, the Debtor had approximately $323,000 in credit card debt, which included the cash advances. Further, the Debtor testified that, in 2007, at the time she applied for the Estero Property refinancing, she believes she had over $200,000 in bank accounts.[6]

The Debtor was unable to explain what she and her husband did between 2007 and 2010 when the bankruptcy case was filed with over $1.1 million in cash plus over $170,000 in credit card charges, other than that she and her husband lived on credit cards because she wasn't working and that she used the money to pay the debt service and upkeep on the Miami Property and the Estero Property (as well as taking numerous trips to Disney World, etc.).  However, other than a handwritten summary prepared by the Debtor and some loan payment statements showing when and for how much (but not from whom or where) payments were made to the lender on account of the Estero Property, the Debtor provided no records to support what she did with the money.[7],[8]  At trial, the Debtor testified that she stored all her records in her garage and they got moldy so she threw them out.  In her depositions, however, the Debtor testified that she didn't

---

[4] The Debtor estimated she received approximately $600,000 in net proceeds from the refinancing.  The Trustee, testifying as a forensic accountant, stated the unexplained net proceeds from the refinancing was approximately $685,000.

[5] As will be addressed later in this opinion, because the Debtor neither maintained nor produced any credit card records, the facts regarding how much and when cash advances occurred is based entirely on the Debtor's speculations and memory.

[6] The loan application, dated May 25, 2007, lists $230,000 in bank accounts.

[7] The Debtor's schedules listed personal property with a value on the petition date February 17, 2010 of $800 and a total of $105 in one bank account.

[8] The Debtor did provide personal bank statements for part of 2009 and business bank statements for 2007.  She also provided tax returns for 2004 - 2008.  The Debtor testified that she was not required to file tax returns for 2010 and 2011 because her accountant told her she didn't make enough money to file a tax return.

keep copies of her personal financial records and she threw these out, with her credit card statements, every few months when cleaning. The Debtor further testified that she did not keep copies of her bank statements.

## ANALYSIS

### §727(a)(3) – Failure to Keep or Preserve Financial Records

Section 727(a)(3) of the Bankruptcy Code requires that the court deny the discharge to a debtor who:

> has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case

11 U.S.C. §727(a)(3). The purpose of section 727(a)(3) is to provide creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *Meridian Bank v. Alten (In re Alten),* 958 F.2d 1226, 1230 (3d Cir. 1992) (citing 4 Collier on Bankruptcy ¶ 727.-03[1] (15th ed. 1979)). "The test is whether 'there is available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." *Id. (citations omitted); see also In re Juzwiak,* 89 F.3d 424, 427 (7th Cir. 1996).

In support of his claim for relief under section 727(a)(3), the Trustee alleges that the Debtor failed to adequately preserve or maintain adequate records from which the Debtor's financial condition may be ascertained. The Debtor counters that she gave the Trustee lots of records and if he felt he needed more he could have gotten them himself.

In order to establish a prima facie cause of action under section 727(a)(3), the Trustee must show: (1) that the Debtor failed to keep or preserve adequate records, and (2) that such failure makes it impossible to ascertain the Debtor's financial condition and material business transactions. *Pereira v. Young (In re Young),* 346 B.R. 597, 608 (Bankr. E.D.N.Y. 2006). Integral to a finding that the Debtor failed to keep or preserve adequate records is a finding that the Debtor had a duty to keep or preserve the particular records of interest to the Trustee.

While it is true that debtors seeking discharge pursuant to chapter 7 of the Bankruptcy Code have a general duty to maintain comprehensible records,[9] the nature and extent of that duty depends, for the most part, on the facts and circumstances of the particular case. *Krohn v. Frommann (In re Frommann),* 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993). The court in *In re Frommann* recognized that "[i]f the debtor's transactions were such that 'others in like circumstances would ordinarily keep financial records'… then she must show more than that 'she did not comprehend the need for them and must carry [her] explanation by way of justification to the point where it reasonably appears that because of unusual circumstances [s]he was under no duty to keep them.'" *Id.* (internal citations omitted). The inverse is also true: if the debtor's transactions were such that others in like circumstances would not ordinarily keep financial records, then the debtor is not under a duty to keep them. A sophisticated debtor, such as an attorney, will be held to a higher standard of record keeping practices. *In re Alten,* 958 F.2d at 1231. Only after the trustee satisfies his burden of showing that the debtor's records are insufficient to determine the debtor's financial condition and business transactions, does the burden shift to the debtor to produce evidence to rebut the proof of insufficient records, or to justify the absence of records. *In re Young,* 346 B.R. at 608.

---

[9] *Goldberg v. Lawrence (In re Lawrence)*, 227 B.R. 907, 916 (Bankr. S.D. Fla. 1998).

5

Whether a debtor's failure to retain records was justified must be determined in light of all the circumstances of the case. *Id.* at 609-10 (citing *Christy v. Kowalski (In re Kowalski),* 316 B.R. 596, 603 (Bankr. E.D.N.Y. 2004); *see also Cox v. Lansdowne (In re Cox),* 904 F.2d 1399 (9th Cir. 1990). A "'combination of factors, including the debtor's personal situation and circumstances beyond the debtor's control,'" may lead to justification of a failure to keep or preserve records. *In re Young,* 346 B.R. at 610 (citing *Ochs v. Nemes (In re Nemes),* 323 B.R. 316, 327 (Bankr. E.D.N.Y. 2005). However, the Trustee does not need to show that the Debtor's failure to keep the records was intentional. "The ability to keep records necessary to ascertain a debtor's personal or business transactions is normally fully within the control of the debtor; it would be inequitable to grant a discharge to a debtor who, by his or her own action or inaction, regardless of whether an intent to defraud existed, has unjustifiably failed to keep records from which the trustee can determine a debtor's financial condition." *Menotte v. Hahn (In re Hahn),* 362 B.R. 542, 547 (Bankr. S.D. Fla. 2007); s*ee Pereira v. Young,* 346 B.R. 597.

In the instant case the Debtor is a licensed attorney and title insurance agent. Notwithstanding that she recognizes the need to maintain her business records, the Debtor claimed that she never kept any records of any of her own refinancing transactions, and that she threw out her personal bank statements and credit card statements, frequently, and generally, every month. Indeed, even the records the Debtor did produce – statements of payments on the mortgage loans - she testified she downloaded from the internet; she did not get them from files she maintained. The Debtor also testified in her deposition that she spent well over $200,000 repairing the Estero Property after Hurricane Charley, but even though she made an insurance claim, the Debtor testified she kept no records of her repair expenditures. Moreover, although in

deposition the Debtor testified she threw away her bank statements every month and threw out her other personal papers every few months, at trial she testified that she kept her records but threw them out after they became moldy. The Debtor also kept no copies of, nor made any attempt to obtain copies of, any of her credit card statements, even though at the time she filed bankruptcy she owed over $300,000 to various credit card companies. Nor did the Debtor provide any other evidence showing what she did with the money she obtained from the refinancings or the credit card advances.  The Debtor also provided no other evidence of what she purchased with the money or the credit cards.

While it is true that, generally, individuals may not keep copies of every financial transaction and proof of every expense, the law requires that a debtor provide information sufficient to allow his or her creditors to ascertain his or her affairs. The Debtor has kept no bank statements, virtually no records of her multiple refinancing transactions,[10] and no records of hundreds of thousands of dollars in alleged purchases and repairs. The Debtor has provided no information, other than a self-serving handwritten summary drafted from memory, some internet statements, and minimal bank records, from which the Trustee or creditors can determine anything, including whether the Debtor purchased assets that are unaccounted for, or

---

[10] The Trustee asserts in his complaint that the Debtor's discharge should be denied for her failure to keep records of any of her financings of the Estero Property, including a 2003 home equity line of credit from which the Debtor obtained $475,000 over a period of one year from 2003-2004, and a 2004 refinancing of the two mortgages on the Estero Property from which the Debtor netted $200,000, for which the Debtor, consistent with later practice, kept no records.  The Debtor also testified she borrowed $110,000 from "someone" when she first bought the Estero Property but she doesn't remember who the person was from whom she borrowed the money, although she acknowledged that it was someone close enough to her that she was given a $110,000 loan.  The Debtor testified she paid back that loan.  Nonetheless, although the Debtor's habitual failure to keep records, together with her memory lapses, are troubling, as noted by the Third Circuit in *In re Alten*, the failure to keep records must have some temporal relevancy.  Since these earlier transactions took place between five and nine years prior to the bankruptcy filing, I find that they probably fall outside the "reasonable period of time" from which the Debtor's present financial condition can be ascertained. Since I find that the Debtor's failure to maintain records of the 2007 Estero Property refinancing and the 2007 South Miami Property financing as well as her failure to maintain other records, warrant denial of her discharge, I do not need to make any more particular findings with respect to the Debtor's earlier refinancing efforts.

made expenses on behalf of, or transfers to, third parties. For example, the husband owns a $132,000 certificate of deposit that the Debtor claims was not generated from the refinancing of the Estero Property, the Debtor's credit card advances or through any methods related to the Debtor, notwithstanding that the Debtor's husband makes almost no money. Yet the Debtor has failed to provide any records from which the Trustee can confirm the truthfulness of such a claim.[11] Moreover, the Debtor claims to have no idea where her husband got that money. It is inconceivable that the Debtor has no idea where her husband obtained $132,000. It is also inconceivable that a practicing attorney, especially one who practices in real estate and title work, would not understand that she should keep copies of her bank statements, refinancing documents, and repair records, especially when the transactions involve hundreds of thousands of dollars, and with respect to over $200,000 in expenditures, relate to an alleged insurance claim.

Moreover, having failed to keep these records, it was incumbent upon the Debtor to try to get copies of her bank statements and credit card statements and to track down copies of her refinancing records. In *Sackett v. Shahid* (*In re Shahid),* 334 B.R. 698, 707 (Bankr. N.D. Fla. 2005), the court held that the movants met their burden of showing that the debtor did not maintain adequate records when he kept no records of his financial affairs and "took little or no action to obtain any further documents or records [other than three unsigned tax returns]". The court noted that since the debtor did not get copies of his credit card statements "the plaintiffs cannot verify what Shahid actually used his credit cards for. Instead they are left to rely solely

---

[11] Apparently the Debtor's husband, although he works, has not had a steady or significant income, so it is not improbable that some, if not all, of the funds in the certificate of deposit came from refinancing of either the Miami Property or Estero Property.

8

on the debtor's uncorroborated and vague oral representations of the cards' use." *Id.* at 707. The debtor's discharge was denied.

The Trustee has demonstrated that the Debtor failed to preserve and maintain virtually any of her financial records and there is no question that because of the Debtor's failure to maintain these records the Trustee was unable to ascertain the Debtor's financial condition.[12] The Debtor has not provided any reasonable explanation for her failure to maintain her records. Her only explanation is that she would have kept the records if she knew she was filing bankruptcy. Even if the Debtor were truthful, which I find she was not, the explanation is not adequate and not supportable. The Debtor had an absolute obligation, unrelated to her bankruptcy, to keep records of her refinancings and home repairs as well as her bank statements. The Debtor has failed to meet that obligation in this case. The Debtor further made no effort to retrieve those records from any source, other than downloading from the internet copies of some mortgage loan payment statements, and gathering a few bank statements. Moreover, the Debtor failed to provide any acceptable justification for her failure to keep or recreate her records other than that she couldn't afford to get copies of her statements from the bank. Accordingly, the Trustee is entitled to judgment on Count III of the Complaint.

---

[12] The Trustee testified that he had no way to verify what the Debtor did with all the money she pulled out of the two properties and, consequently, he was unable to verify whether there were any undisclosed assets or possible avoidance actions.

## §727(a)(5) – Failure to Explain the Loss of Assets

Section 727(a)(5) requires the bankruptcy court to deny a discharge to any debtor who has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. 11 U.S.C. §727(a)(5). The Trustee has the initial burden of proving, by a preponderance of the evidence, that the Debtor at one time owned substantial and identifiable assets that are no longer available for her creditors. *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *see also In re Gonzalez,* 302 B.R. 745, 755 (Bankr. S.D. Fla. 2003). Once the Trustee has established a loss of assets, the burden then shifts to the Debtor to provide a satisfactory explanation for the loss. *Id.*

> At trial, the party objecting to a discharge has the burden of proving the objection…. But once that party meets the initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor to explain satisfactorily the loss…. "The creditor's burden of persuasion does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of his assets." …To be satisfactory, "an explanation" must convince the judge….Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory. *In re Reed,* 700 F.2d [986, 993 (5th Cir. 19830] (debtor's explanation that $19,586 was consumed by business and household expenses and gambling debts was unsatisfactory); *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir. 1966) (satisfactory explanation must consist of more than a vague, indefinite and uncorroborated hodgepodge of financial transactions).

*Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir. 1984) (citations omitted except as noted).

The Debtor's explanation that she didn't keep records and couldn't afford to get the records does not satisfy her burden. "[U]nlike § 727(a)(3), the plain language of § 727(a)(5) makes clear that the debtor cannot offer a justification for the failure to satisfactorily explain the loss of assets." *In re Yanni*, 354 B.R. 708, 716 (Bankr. E.D. Pa. 2006). "A debtor facing an

objection to discharge under § 727(a)(5) may very well have to gather or produce documents and records which she might otherwise not ordinarily keep and in fact may be justified for failing to keep under § 727(a)(3). She may well have to hire professionals to locate her assets if she is unable to do so herself." *Id.* (quoting *In re Mezvinski,* 265 B.R. 681, 690-91 (Bankr. E.D. Pa. 2001)).

In this case, even were I to find that the Debtor provided adequate explanation[13] of her failure to keep records, which I do not, the Debtor would, nonetheless, be required to reconstruct her financial records in order to satisfactorily explain the use of approximately $1.1 million in cash, and approximately $170,000 in non-cash advance credit card charges. This she has not done. The Debtor claims she did not have the money to reconstruct her financial records and that it was the Trustee's responsibility to subpoena all her records. The Debtor is wrong. The Debtor's first obligation was to maintain her records; this she did not do. Her second obligation was to reconstruct her records in order to explain what happened to all the money. This she did not do either. Not only did the Debtor fail to provide more than minimal bank records, or make any effort to do so, she did not make any effort to retrieve documents from her accountant, or from a mortgage broker that she apparently used at least a few times for her refinancing, or the title company she testified she used for refinancing, or her bank. She also did not try to retrieve

---

[13] I find that the Debtor's explanations were not only inadequate, but in many instances appear to be untruthful and internally inconsistent. The Debtor has not demonstrated an affinity for truthfulness. The evidence shows that the Debtor and her husband submitted numerous fraudulent financial statements in support of various refinancing efforts and her explanation regarding the inaccuracy of those statements was not plausible. For example, the Debtor testified that a mortgage broker prepared all her fraudulent loan applications and she did not read them, she just initialed them. I find it unbelievable that a licensed attorney, in fact, a licensed title agent, would not know that she was required to read the financial applications very carefully before she signed them. These were not slight discrepancies. The financing applications indicated the Debtor earned $35,000 a month and her husband earned $55,000 a month. The Debtor testified that she and her husband never earned $90,000 in a year, let alone in a month.

her credit card statements. Indeed, according to the Debtor's own testimony, the Debtor made virtually no effort to try to reconstruct what she did with all that money. Accordingly, I find that the Trustee has met his burden and that he is entitled to judgment in his favor on Count II of the Complaint.

## Objection to Exemptions

The Trustee also objects to the Debtor's claim of homestead exemption for the Miami Property. While the Trustee did establish that the Debtor used the Estero Property address for her driver's license, which the Debtor explained she did in order to get lower car insurance rates, the Debtor did establish that the Miami Property is her homestead. The balance of the Trustee's objection is that the Debtor is not entitled to exempt more than $1,000 for personal property. That is the law. However, the Trustee did not highlight any particular personal property for which the Debtor was seeking an exemption over the amount to which she is entitled.

Accordingly, the Debtor is entitled to partial judgment in her favor on Count V of the Complaint with respect to the homestead claim; the Trustee is entitled to partial judgment in his favor on County V of the Complaint with respect to the cap on any personal property exemption.

## CONCLUSION

While, as the Debtor argues in her closing, the purpose of bankruptcy is to provide a debtor with a fresh start, as I have observed so many times, bankruptcy, and its fresh start, are for the "honest but unfortunate debtor." *Grogan v. Garner,* 498 U.S. at 287; *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). This Debtor has not been honest. She has not been truthful in

her testimony. Moreover, whether by design, disinterest, or lack of understanding, this Debtor has failed to meet her obligations as a debtor to maintain records or adequately explain loss of assets. Having failed to keep her part of the bankruptcy bargain, the Debtor has lost her entitlement to a bankruptcy discharge.

The Trustee is directed to prepare a final judgment consistent with this memorandum opinion.

###

Copies furnished to:
James B Miller, Esq.
Emmanuel Perez, Esq.

*The clerk of court shall serve a conformed copy of this order upon all parties in interest.*